WAGNER CHOI & VERBRUGGE
Attorneys At Law

JAMES A. WAGNER
745 Fort Street, Suite 1900
Honolulu, HI 96813
Telephone: (808) 533-1877
Fax: (808) 566-6900
Email: jwagner@hibklaw.com

Attorney for Debtor
**GROVE FARM FISH & POI, LLC**

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re:<br><br>GROVE FARM FISH & POI, LLC,<br><br>Debtor. | CASE NO. 10-03340<br>(Chapter 11) |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF ORDER APPROVING SALE OF DEBTOR'S INTEREST IN DERIVATIVE CLAIMS; EXHIBIT "A"

The Motion of Grove Farm Fish & Poi, LLC for entry of an order approving the Debtor's proposed sale of its interest in Derivative Claims came for hearing on February 14, 2012. This Court, having reviewed and considered (i) the Motion, the Declaration of Timothy E. Johns filed in support thereof, and the

U.S. Bankruptcy Court - Hawaii  #10-03340  Dkt # 247  Filed  02/29/12  Page 1 of 19

record in the case; (iii) the representations of counsel made at the hearing, and (iv) no objections to the Motion having been filed, and it appearing that the relief requested in the Motion is in the best interest of the Debtor, its estate, and creditors and other parties in interest; and upon the record of the hearing; and after due deliberation thereon; and adequate notice, good cause appearing therefore, it is hereby

FOUND AND DETERMINED THAT:

A.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1337, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (N).  Venue of these claims and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.    The statutory predicates for the relief sought in the Motion include sections 105, 363, and 365 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq., as amended ("Bankruptcy Code") and Fed.R.Bankr. P. 2002 and 6004, and Local Bankruptcy Rule 6004-1.

C.    Approval of the proposed sale of the Derivative Claims by and between Visionary, LLC ("Buyer") and the Debtor ("Seller"), pursuant to the Derivative Claims Purchase Agreement substantially in the form attached hereto as

2

Exhibit "A" ("Agreement"), is in the best interest of the Debtor, its creditors, its estate, and other parties in interest.

D. A reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all interested persons and entities. No objections have been filed.

E. The Debtor has demonstrated good, sufficient, and sound business purpose and justification for the Sale, because the Debtor has determined that selling the Debtor's interest in the Derivative Claims to buyer on substantially the terms and conditions set forth in the Agreement is in the best interest of the Debtor's estate, given the expense of litigating the Derivative Claims to conclusion, including potential appeals, potential difficulties regarding the collectability of the any judgment that may be obtained, and the limited potential distribution of litigation proceeds to unsecured creditors from Derivative Claims in light of the amount of secured claims that would be asserted against any such recovery.

F. The Agreement was negotiated, proposed and entered into by Seller and Buyer without collusion, in good faith, and from arm's-length bargaining positions. Neither the Seller nor Buyer has engaged in any conduct that

3

would cause or permit the Agreement or the Sale to be avoided under 11 U.S.C. § 363(n).

G.    With respect to the Agreement, the Sale, and this Order, Buyer is acting as a good faith purchaser, as that term is used in the Bankruptcy Code and is, accordingly, entitled to the protections set forth in section 363(m) of the Bankruptcy Code.

H.    The consideration provided by Buyer for the Derivative Claims pursuant to the Agreement:  (i) is fair and reasonable, (ii) is the highest and best offer for the Derivative Claims, (iii) will provide a greater recovery for the Debtor's creditors than would be provided by any other practical available alternative, and (iv) constitutes reasonably equivalent value and fair consideration with respect to the Debtor in light of the financial wherewithal of the estate and the other findings set forth above in paragraph E.

I.    The transfer of Derivative Claims to Buyer will be a legal, valid, and effective transfer of Derivative Claims, authorized pursuant to the Bankruptcy Code, and will vest buyer with all right, title, and interest of the Debtor to the Derivative Claims, free and clear of all liens, claims (as defined in the Bankruptcy Code), interests, ~~rights to setoffs, recoupment, counterclaims~~ and

4

U.S. Bankruptcy Court - Hawaii   #10-03340   Dkt # 247   Filed 02/29/12   Page 4 of 19

encumbrances, whether known or unknown, inchoate, unliquidated, or liquidated, contingent, in the form of setoff or counterclaim, or otherwise.

J.      Seller may sell the Derivative Claims free and clear of all interests *to the fullest extent permitted by law* ~~of any kind or nature whatsoever~~ because, in each case, one or more of the standards set forth in 11 U.S.C. § 363(f)(1)-(5) has been satisfied.

K.      Upon Closing of the Derivative Claims, said Derivative Claims shall no longer constitute property of the estate and the automatic stay imposed by 11 U.S.C. § 362 shall not apply to the prosecution or other disposition of such claims by Visionary.

FEB 2 9 2012

_____
United States Bankruptcy Judge

*In re Grove Farm Fish & Poi, LLC*; Case No. 10-03340; FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF ORDER APPROVING SALE OF DEBTOR'S INTEREST IN DERIVATIVE CLAIMS; EXHIBIT "A"

5

## DERIVATIVE CLAIMS PURCHASE AGREEMENT

THIS DERIVATIVE CLAIMS PURCHASE AGREEMENT (the "**Agreement**") is made and entered into as of the ____ day of November, 2011, by and between VISIONARY, LLC, a Hawaii limited liability company, dba LIHUE LAND COMPANY, ("**Visionary**" or "**Buyer**"), and GROVE FARM FISH & POI, LLC, a Hawaii limited liability company, dba HUKILAU FOODS, debtor and debtor-in-possession herein, (the "**Debtor**" or "**Seller**") in the United States Bankruptcy Court in the District of Hawaii (as hereinafter defined), Bankruptcy Case No. 10-03340, (the "**Bankruptcy Case**").

## RECITALS

A.     On June 9, 2010, John R. Cates (**"Cates"**) filed a Complaint against Warren H. Haruki ("Haruki"), Grove Farm Fish & Poi LLC dba Hukilau Foods ("GFFP"), Visionary, LLC dba Lihue Land Company, Oceanspar, LLC ("Oceanspar"), Blue Ocean Mariculture LLC ("Blue Ocean"), Todd Madsen ("Madsen"), Ken Miyasato ("Miyasato"), Keith Yap ("Yap"), and Doe Defendants (collectively hereinafter sometimes referred to as "**State Court Defendants**") alleging 21 claims (the "**Complaint**"), commencing Civil No. 10-1-1273-06 (RAN) in the Circuit Court of the First Circuit State of Hawaii (the "**State Court Action**"). The Complaint identifies Counts II, IV, VI, VIII, X, XII, and XIV as Derivative Claims of Seller.

B.     On July 12, 2010, Visionary filed a Counterclaim against John R. Cates, Cates International, Inc., John Does 1-10, Jane Does 1-10, Doe Corporations 1-10, Doe Limited Liability Companies 1-10, Doe Partnerships 1-10, Doe Limited Liability Partnerships 1-10, and Grove Farm Fish & Poi dba Hukilau Foods (collectively hereinafter sometimes referred to as "**Counterclaim Defendants**"), (the "**Counterclaim**"). The Counterclaim identifies Counts I, III, IV, VII, VIII, IX, XI, and XIII as Derivative Claims of Seller.

C.     On September 29, 2010, the State Court entered an Order Granting Visionary, Haruki, Yap, and Miyasato's Motion to Compel Arbitration ("Motion to Compel"). The Order Granting the Motion to Compel Arbitration stayed the State Court Action with respect to all claims (excluding claims for injunctive relief) and counterclaims between John R. Cates, Cates International, Inc., on the one hand, and Warren Haruki, Visionary, LLC, Ken Miyasato, and Keith Yap, on the other hand, and referred the litigation of those claims and counterclaims to that arbitration known as Dispute Prevention Resolution ("DPR") No. 10-0396-A ("Arbitration").

D.     On October 25, 2010, Cates filed a First Amended Complaint (the "**FAC**") in the State Court Action , some of which are derivative against Haruki, GFFP, Oceanspar, Blue Ocean, Madsen, Miyasato, Yap, and Doe Defendants, alleging 14 claims. Cates' FAC alleged against Visionary Counts I, II, III, IV,

67620

# EXHIBIT A

V, VI, VII, VIII, IX, XI, XII, and XIV. Cates' FAC alleged against Managers Counts II, III, IV, V, VI, VII, IX, XI, XII, XIII, and XIV. Cates' FAC alleged against Oceanspar, Blue Ocean, and Madsen Counts V, VIII, X, and XII.

E.   On November 1, 2010, Seller filed for protection under Chapter 11 of the United States Bankruptcy Code, in the Bankruptcy Court.

F.   On April 6, 2011, Debtor commenced Adversary Proceeding 11-00931 in the Bankruptcy Court by filling a Complaint against Cates and Visionary, in which Debtor requested the Bankruptcy Court to issue an order determining and declaring the extent of Debtor's interest in those claims asserted by Cates and Visionary in the State Court Action (the "Adversary Complaint").

G.   In the Adversary Complaint, Debtor asserted that various claims asserted by Cates' FAC and Visionary's Counterclaim are derivative and not direct as claimed by the parties. In the First Amended Complaint, the Debtor asserted that Counts I, II, IV, V, VI, VII, VIII, IX, X, XI, XII, XIII, and XIV are derivative claims belonging to Debtor and that Count III was a claim against the Debtor subject to the claim allowance process. Moreover, the Debtor asseted that with respect to Visionary's Counterclaim, Counts II, VI, X, and XII were also derivative.

H.   On May 16, 2011, Visionary answered the Adversary Complaint requesting that the Bankruptcy Court determine Counts I, II, III, IV, V, VI, VII, VIII, IX, X, XI, XII, XIII, and XIV of Cates's Counterclaim are all derivative claims, and as such, are property of the Debtor's Bankruptcy Estate.

I.   On August 31, 2011, the Bankruptcy Court filed a Memorandum Decision on Motions Set for August 11, 2011, (the "**Memorandum Decision**"), which, among other things, analyzes and determines the legal parameters of the Derivative Claims, which are the subject of this Agreement. In its Memorandum Decision, the Bankruptcy Court determined that certain of the claims asserted by Cates' FAC and Visionary's counterclaim were derivative, certain claims direct, and left the determination of whether any remaining state court claims were either "direct" or "derivative" to the state court arbitrator.

J.   Buyer wishes to purchase from Seller, and Seller is willing to sell and convey to Buyer, all of Seller's right, title and interest in and to any and all derivative claims that Seller has against (1) Cates, (2) Cates International, Inc., (3) Visionary, (4) Oceanspar, (5) Blue Ocean, (6) Madsen, (7) Miyasato, (8) Yap, (9) Haruki, and/or (10) any and all State Court Defendants or Counterclaim Defendants; including without limitation the State Court Action, pursuant to and in accordance with the Bankruptcy Code, including without limitation Section 363 of the Bankruptcy Code, and subject to the terms and conditions contained in this Agreement.

2

NOW THEREFORE, in consideration of the mutual covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by all parties, the parties, intending to be legally bound, have agreed as follows:

## AGREEMENT

### ARTICLE 1 - DEFINITIONS

**"Affiliate"** of a Person shall mean a Person that directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with, the first Person.

**"Adversary Proceeding"** shall have the meaning set forth in the Recitals.

**"Agreement"** shall mean this Derivative Claims Purchase Agreement.

**"Applicable Law"** shall mean any statute, law, rule, regulation, code, or ordinance or any Order of any governmental entity to which a specified Person or property is subject.

**"Bankruptcy Case"** shall have the meaning set forth in the opening paragraph of this Agreement.

**"Bankruptcy Code"** shall mean the United States Bankruptcy Reform Act of 1978, as codified in Title 11 of the United States Code, as in effect on the Petition Date, together with all amendments and modifications thereto that were subsequently made applicable to the Chapter 11 Cases.

**"Bankruptcy Court"** shall mean the United States Bankruptcy Court for the District of Hawaii or, if such court ceases to exercise jurisdiction over the Bankruptcy Case, the court or adjunct thereof that exercises jurisdiction over the Bankruptcy Case.

**"Buyer"** shall have the same meaning set forth in the opening paragraph of this Agreement.

**"Cates"** shall have the same meaning set forth in the Recitals.

**"Closing"** shall mean the closing of the purchase and sale of the Derivative Claims.

**"Closing Date"** shall have the meaning set forth in Section 4.

3

U.S. Bankruptcy Court - Hawaii   #10-03340   Dkt # 247   Filed  02/29/12   Page 8 of 19

"**Complaint**" shall have the meaning set forth in the Recitals.

"**Control**" means the possession, directly or indirectly, of the power to direct or cause the direction of the management policies of a Person, whether through the ownership of voting securities, by contract or other arrangement, as trustee or executor, or otherwise.

"**Conveyance Documents**" shall mean any and all assignment or transfer forms, bills of sale, general instruments of sale, conveyance and delivery, or other documents of assignment, transfer, or conveyance, as required by Buyer to document the transfer of the Derivative Claims to Buyer pursuant to the terms of this Agreement.

"**Counterclaim**" shall have the same meaning set forth in the Recitals.

"**Counterclaim Defendants**" shall have the same meaning set forth in the Recitals.

"**Debtor**" shall have the same meaning set forth in the opening paragraph of this Agreement.

"**Derivative Claims**" shall mean any and all claims which may be brought or asserted on behalf of Seller for harm suffered by Seller, including but not limited to those alleged in the State Court Action, the Complaint, Counterclaim, FAC, and Memorandum Decision; provided however, that any claims the Debtor may have against Cates that are contractual defenses to Cates' employment compensation claims asserted in his proof of claim filed _____ are expressly excluded from the "Derivative Claims" that are the subject of and being sold under this Agreement .

"**FAC**" shall have the same meaning as set forth in the Recitals.

"**Filing Date**" means November 1, 2010.

"**Final Order**" means an Order that has been entered by the Bankruptcy Court that is no longer subject to appeal.

"**Lien**" shall mean any (a) security interest, lien, mortgage, pledge, hypothecation, encumbrance, claim, easement, charge, restriction on transfer or otherwise, or interest of another Person of any kind or nature, including any conditional sale or other title retention Contract or lease in the nature thereof; (b) any filing or agreement to file a financing statement as Seller under the Uniform Commercial Code or any similar statute; and (c) any subordination agreement in favor of another Person.

"**Memorandum Decision**" shall have the meaning set forth in the Recitals.

4

"**Order**" shall mean any writ, judgment, decree, injunction, or similar order, writ, ruling, directive or other requirement of any governmental entity (in each such case whether preliminary or final).

"**Permitted Continuing Liens**" shall mean any Lien under the Loan and Securities Agreement.

"**Person**" shall mean any individual, corporation, partnership, limited liability company, joint venture, association, joint-stock company, trust, enterprise, unincorporated organization, governmental entity, or other entity.

"**Rules**" shall mean the Federal Rules of Bankruptcy Procedure.

"**Sale Motion**" shall have the meaning set forth in Section 5.1.

"**Sale Order**"shall have the meaning set forth in Section 5.1.

"**Seller**" shall have the same meaning set forth in the opening paragraph of this Agreement.

"**State Court**" shall mean the Circuit Court of the First Circuit State of Hawaii

"**State Court Action**" shall have the meaning set forth in the Recitals.

"**State Court Defendants**" shall have the meaning set forth in the Recitals.

"**Support Documents**" shall have the same meaning as set forth in Section 4.1.

"**Visionary**" shall have the same meaning set forth in the opening paragraph of this Agreement.

Whenever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine, or neutral gender shall include the masculine, feminine and neutral. Except as expressly stated or shown, the words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Agreement as a whole and not to any particular paragraph, subparagraph, or clause contained in this Agreement. The words "includes" and "including" are not limiting and mean that the things specifically identified are set forth for purposes of illustration, clarity or specificity and do not in any respect qualify, characterize or limit the generality of the class within which such things are included.

### ARTICLE 2 - PURCHASE AND SALE OF DERIVATIVE CLAIMS

U.S. Bankruptcy Court - Hawaii  #10-03340  Dkt # 247  Filed  02/29/12  Page 10 of 19

2.1 **CLAIMS.** On the Closing Date, upon the terms and subject to the conditions contained in this Agreement, Seller shall sell, assign, transfer, convey and deliver to Buyer, and Buyer shall purchase, assume, and acquire from Seller, free and clear of all Liens, Claims (as defined in the Bankruptcy Code), and indebtedness (other than Permitted Continuing Liens), whether known or unknown, all as contemplated by section 363 of the Bankruptcy Code, all of Seller's right, title, interest, in and to the Derivative Claims against (1) Cates, (2) Cates International, (3) Visionary, (4) Oceanspar, (5) Blue Ocean, (6) Madsen, (7) Miyasato, (8) Yap, (9) Haruki, (10) any and all State Court Defendants or Counterclaim Defendants, and (11) all other parties or defendants, whether named or to be named and all other defendants in the State Court Action ("**Derivative Claims**"). Seller shall sell, assign, transfer, convey, and deliver the Derivative Claims and Seller shall evidence such transaction by executing and delivering to Buyer such Conveyance Documents as the Buyer shall deem necessary or desirable to vest in Buyer good, value and marketable title to the Derivative Claims.

2.2 **Documents.** The Derivative Claims to be purchased under Section 3.1 above, shall include access to or copies of all files, records, and all other documents of the Debtor in any way relevant to the State Court Action and Adversary Proceeding and in the case of electronic media, the right to access the Debtor's computers and servers, as necessary, to recover or preserve all documents and other information contained therein (the "**Support Documents**").

2.3 **"As Is" Transaction.** Buyer hereby acknowledges and agrees that, except as otherwise expressly provided in this Agreement, Seller makes no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Derivative Claims, or otherwise relating to any of the transactions contemplated hereby. Buyer is acquiring the Derivative Claims based solely upon Buyer's independent investigation. Accordingly, Buyer will accept the Acquired Derivative Claims at the Closing "**AS IS**," "**WHERE IS**," and "**WITH ALL FAULTS**"; provided, however, Seller hereby acknowledges and agrees that it will use its reasonable best efforts to preserve and maintain the Derivative Claims until the Closing.

## ARTICLE 3 - BIDDING/CONSIDERATION

3.1 **Bidding**

A. Buyer's consideration set forth in paragraph 3.2 below, shall be subject to cash overbids at the Sale Hearing. Any person intending to bid at the Sale Hearing (an "**Overbidder**") shall, not later than 1:00 p.m. local Hawaii time on the business day prior to the Sale Hearing, submit any such overbid to counsel for Seller at their offices, together with (a) a cashier's check payable to Debtor in an amount equal to twenty percent (20%) of

6

U.S. Bankruptcy Court - Hawaii  #10-03340  Dkt # 247  Filed  02/29/12  Page 11 of 19

the overbid and (b) evidence of ability to fund the acquisition of the Derivative Claims reasonably satisfactory to Seller (a "**Qualified Bid**"). Any bid by an Overbidder will not be accepted by Seller as a Qualified Bid if it contains any conditions to close less favorable than those contained herein, including without limitation any financing or diligence conditions. Minimum overbids increments shall be at least $10,000. Closing on any purchase to a bidder, other than Buyer (a "**Successful Bidder**"), shall be on a date that is three (3) business days after entry of the order approving the sale to the Successful Bidder becomes a Final Order (the "**Successful Bidder Closing Date**"). In the event that a Successful Bidder fails to close on the Successful Bidder Closing Date, the Successful Bidder's deposit shall be forfeit.

B. The provisions of this Agreement, excluding paragraphs 3.2, shall be binding on the Successful Bidder as if the Successful Bidder was the "Buyer" hereunder.

C. Any cash sale to a Successful Bidder shall be free and clear of all Liens, Claims, and indebtedness, including the Permitted Continuing Liens.

3.2 **Buyer's Consideration.** Consideration by Buyer for this Agreement shall be SIX HUNDRED THOUSAND AND NO/100 DOLLARS ($600,000.00) (the "Purchase Price").

## ARTICLE 4 – INDEMNITY

Buyer shall indemnify and hold Seller harmless from any and all claims asserted against and/or damages caused Seller as a result of Buyer's prosecution of the Claims acquired pursuant to this Agreement.

## ARTICLE 5 - THE CLOSING

Subject to the satisfaction or waiver of the conditions set forth herein, the Closing shall occur on or before December 31, 2011, in the offices of Seller's counsel (or on such other date and at such other time and place as the parties shall agree in writing (the "**Closing Date**"). The timing of the Closing Date is of the essence of this Agreement. Notwithstanding any conflicting or inconsistent provisions of this Agreement, the representation and warranties of Seller in this Agreement shall terminate and not survive the Closing.

5.1 **Deliveries of the Seller.** At the Closing, Seller shall deliver to Buyer:

(a) the Conveyance Documents;

(b) the Support Documents

7

5.2  **Deliveries of the Buyer.**    At the Closing, Buyer shall deliver to Seller:

(a)    the Purchase Price which, in the event of a cash purchase price, shall be by wire transfer according to instructions provided by Seller at Closing;

(b)    a certified copy of resolutions (in form satisfactory to the Seller) reflecting that Buyer and its designated affiliates have full power and authority to enter into this Agreement and all agreements executed in connection herewith.

## ARTICLE 6 - BANKRUPTCY COURT APPROVAL

6.1  **Sale Order.**    Seller shall file a motion with the Bankruptcy Court (the "**Sale Motion**") requesting entry of an order (the "**Sale Order**"), in a form acceptable to Buyer.  The Sale Order shall provide that:

(a)    All of the Derivative Claims sold to Buyer hereunder shall be transferred to Buyer free and clear of all liens, encumbrances (other than permitted liens) and liabilities of any kind whatsoever;

(b)    Buyer has acted in good faith within the meaning of section 363(m) of the Bankruptcy Code;

(c)    This Agreement was negotiated, proposed, and entered into by the parties without collusion, in good faith, and from arms' length bargaining positions;

Seller shall use commercially reasonable best efforts to obtain entry of the Sale Order on or before December 30, 2011.  Both Buyer's and Seller's obligations to consummate the transactions contemplated in this Agreement shall be conditioned upon the Bankruptcy Court's entry of the Sale Order.

## ARTICLE 7 - DELIVERIES, ACCESS AND COOPERATION AFTER CLOSING

From time to time after the Closing, at Buyer's request and without further consideration from Buyer, Seller shall execute and deliver a substitution of real party in interest for filing in the State Court Action and such other instruments of conveyance (as Seller or Buyer may prepare) and transfer and take such other action as Buyer reasonably may require to convey, transfer to and vest in Buyer and to put Buyer in possession of any rights or property to be sold, conveyed, transferred, and delivered hereunder, including, the Derivative Claims.

## ARTICLE 8 - REPRESENTATIONS AND WARRANTIES OF SELLER

8

In order to induce Buyer to enter into this Agreement and purchase the Derivative Claims, Seller makes the following representations and warranties to Buyer with respect to the Business and the Derivative Claims, which representations and warranties shall be true and correct as of the Closing Date as well as on the date hereof, except as otherwise disclosed in the applicable Schedule to this Agreement as referenced below:

**8.1** **Authorization.** Subject to the issuance of the Sale Order, the performance of this Agreement by Seller and the execution, delivery, and performance by Seller of each Conveyance Document to which it is or will be a party has been duly authorized by all necessary action.

**8.2** **Execution and Binding Effect.** Subject to the entry of, and the terms of the Sale Order, this Agreement and each of the conveyance Documents, when delivered, is or will be, duly and validly executed and delivered by Seller and constitutes legal, valid and binding obligations of Seller, enforceable in accordance with the terms thereof.

## ARTICLE 9 - REPRESENTATIONS AND WARRANTIES OF BUYER

In order to induce Seller to enter into this Agreement and sell the Derivative Claims, Buyer makes the following representation and warranties to Seller, which representations and warranties shall be true and correct as of the Closing Date, as well as on the dater hereof:

**9.1** **Organization.** Buyer is a limited liability company, validly existing, and in good standing under the laws of the State of Virginia, is registered to do business in the State of Hawaii and has the power and authority to acquire and own the Derivative Claims.

**9.2** **Sufficient Cash and Cash Equivalents.** Buyer has sufficient available cash and cash equivalents on hand to close this Agreement and to perform Buyer's obligations under this Agreement.

**9.3** **Sophisticated Buyer.** Buyer is a sophisticated buyer with respect to the Derivative Claims, has adequate information to make an informed decision regarding the purchase of the Derivative Claims and has independently and without reliance upon the Seller, and based on such information as Buyer has deemed appropriate, made its own analysis and decision to enter into this Agreement, except that Buyer has relied upon the express representations and warranties of Seller contained in this Agreement. Buyer acknowledges that Seller has not made and does not make any representation or warranty, whether express or implied, except as expressly set forth in this Agreement. Except as otherwise specifically set forth herein, Buyer acknowledges that the sale of the Derivative Claims by the Seller to the Buyer is irrevocable, and that Buyer shall have no recourse to the Seller after the Closing Date.

9

## ARTICLE 10 - CONDITIONS TO BUYER'S OBLIGATIONS

The obligations of Buyer to consummate the transactions contemplated hereby shall be subject to the satisfaction on or prior to the Closing Date of all of the following conditions, except such conditions as Buyer may waive in writing:

(a)      The Bankruptcy Court shall have entered the Sale Order, in final form reasonably satisfactory to Buyer, approving the sale of the Derivative Claims by Seller to Buyer, and such order shall not be subject to any valid stay pending appeal.

(b)      No order of any court or governmental or regulatory Authority or body which restrains or prohibits the transactions contemplated hereby shall be in effect on the Closing Date and no suit or investigation by any government agency to enjoin the transactions contemplated hereby or seek damages or other relief as a result thereof shall be pending as of the Closing Date.

Any of the foregoing conditions may be waived, but only in writing by the Buyer.

## ARTICLE 11 - CONDITIONS TO SELLER'S OBLIGATIONS

The obligations of Seller to consummate the transactions contemplated hereby shall be subject to the satisfaction on or prior to the Closing Date of all of the following conditions, except such conditions as Seller may waive:

(a)      The Bankruptcy Court shall have entered the Sale Order approving the sale of the Derivative Claims by Seller to Buyer, and such order shall not be subject to any valid stay pending appeal.

(b)      Buyer shall have deposited the Purchase Price or the Successful Bid, if any.

### ARTICLE 12 - BANKRUPTCY COURT APPROVAL

The parties agree that the Closing shall not occur unless and until the Bankruptcy Court has entered the Sale Order approving this Agreement and authorizing and directing Seller to comply with the terms of this Agreement, including executing and delivering all necessary documents and instruments contemplated hereunder, pursuant to sections 363 and 365 of the Bankruptcy Code.

10

## ARTICLE 13 - TERMINATION

This Agreement may be terminated as follows:

13.1 **Termination by Buyer.**      Buyer may, without liability to Seller, terminate this Agreement by notice to Seller (i) at any time prior to the Closing if material default shall be made by Seller in the observance or in the due and timely performance of any of the terms hereof to be performed by Seller and such material default remains uncured by Seller after the expiration of three days' written notice from Buyer to Seller of the existence of such material default, or (ii) at the Closing if any of the conditions precedent to the performance of Buyer's obligations at the Closing shall not have been fulfilled and such condition remains unfulfilled at the close of business on December 31, 2011, or such later date as shall have been approved by Buyer and Seller.

13.2 **Termination by Seller.**      Seller may terminate this Agreement (i) prior to the Closing, upon the occurrence of a material default or breach by Buyer hereunder that Buyer has failed to cure within three days after Seller's notice to Buyer of such breach or default, or (ii) at the Closing, if any conditions to Seller's obligations to close have not been satisfied. Upon termination of this Agreement by Seller due to Buyer's material default or breach, Seller shall have all remedies provided for herein and/or available at law or in equity.

## ARTICLE 14 - NOTICES

All notices between parties shall be in writing and shall be delivered either personally, by certified mail, or by overnight courier, to the following addresses:

If to Seller:        Grove Farm Fish & Poi, LLC
                     3-1850 Kaumualii Highway
                     Lihue, Hawaii 96766
                     Attn: Reiko Yoshida

With a copy to:      Wagner Choi & Verbrugge
                     Topa Financial Center, Fort Street Tower
                     745 Fort Street, Suite 1900
                     Honolulu, Hawaii  96813

If to Buyer:         Visionary, LLC
                     1100 Alakea Street, 30th Floor
                     Alakea Corporate Tower
                     Honolulu, Hawaii  96813

11

U.S. Bankruptcy Court - Hawaii  #10-03340  Dkt # 247  Filed  02/29/12  Page 16 of 19

Attn: _____

With a copy to:        Ted N. Pettit, Esq.
                       Case Lombardi & Pettit
                       A Law Corporation
                       Pacific Guardian Center, Mauka Tower
                       737 Bishop Street, Suite 2600
                       Honolulu, Hawaii 96813

## ARTICLE 15 - ENTIRE AGREEMENT

This Agreement embodies the entire agreement among the parties and there have been and are no other agreements, representation, or warranties, oral or written among the parties other than those set forth or provided for in this Agreement. This Agreement may not be modified or changed, in whole or in part, except by a supplemental agreement signed by each of the parties.

## ARTICLE 16 - BENEFITS; BINDING EFFECT; ASSIGNMENT

This Agreement is for the benefit of and binding upon the parties hereto, their respective successors and, where applicable, assigns. Neither party may assign this Agreement or any of its rights, interests, or obligations hereunder without the prior approval of the other party.

## ARTICLE 17 - WAIVER

The parties hereto may by written agreement (i) extend the time for or waive or modify the performance of any of the obligations or other acts of the parties hereto or (ii) waive any inaccuracies in the representations and warranties contained in this Agreement. No waiver of any of the provisions of this Agreement will be deemed to constitute or will constitute a waiver of any other provision hereof (whether or not similar), nor shall any such waiver constitute a continuing waiver unless otherwise expressly so provided.

## ARTICLE 18 - NO THIRD-BENEFICIARY

Nothing expressed or implied in this Agreement is intended, or will be construed, to confer upon or give any person or entity other than the parties hereto and their respective successors and assigns any rights or remedies under or by reason of this Agreement; provided that Buyer may assign its right to acquire the Derivative Claims to one or more wholly owned subsidiaries of Buyer (who thereupon shall become the transferee of the Derivative Claims covered by such assigned rights); provided that no such assignment by Buyer shall relieve the Buyer of any of its obligations hereunder.

## ARTICLE 19 - SECTION HEADINGS

12

The headings of the Sections, paragraphs, and subparagraphs of this Agreement are solely for convenience and reference and shall not limit or otherwise affect the meaning of any of the terms or provisions of this Agreement. The references herein to Sections, Exhibits, and Schedules, unless otherwise indicated, are references to sections of and exhibits and schedules to this Agreement, as applicable.

## ARTICLE 20 - COUNTERPARTS

This Agreement may be executed in any number of counterparts and by the parties hereto in separate counterparts, each of which will be deemed to be one and the same instrument.

## ARTICLE 21 - LITIGATION; JURISDICTION

If any legal action is brought for the enforcement of this Agreement, or because of an alleged dispute, breach, default, or misrepresentation in connection with any of the provisions of this Agreement, the successful or prevailing party or parties shall be entitled to recover reasonable attorneys fees, paralegal fees, and other costs incurred in that action or proceeding, in addition to any other relief to which it or they may be entitled. The parties agree that the Bankruptcy Court shall have exclusive jurisdiction to enforce the terms of this Agreement and over all disputes and other matters relating hereto.

## ARTICLE 22 - REMEDIES CUMULATIVE

No remedy made available by any of the provisions of this Agreement is intended to be exclusive of any other remedy, and each and every remedy is cumulative and is in addition to every other remedy given hereunder or now or hereafter existing at law or in equity.

## ARTICLE 23 - GOVERNING LAW

Except to the extent that the Bankruptcy Code and the Rules promulgated thereunder or other federal laws are applicable, and subject to the provisions of any contract, instrument, release, indenture, or other agreement, or document entered into in connection with the Agreement the construction, implementation, and enforcement of this Agreement, and all rights and obligations arising hereunder shall by governed by, and construed and enforced in accordance with, the laws of the State of Hawaii, without giving effect to conflicts of law principles which would apply the law of a jurisdiction other than the State of Hawaii or the United States of America.

## ARTICLE 24 - CONSTRUCTION

The parties have participated jointly in the negotiation and drafting of this Agreement. In the event an ambiguity or question of intent or interpretation arises, this

13

Agreement shall be construed as if drafted jointly by the parties and no presumption or burden of proof shall arise favoring or disfavoring any party by virtue of the authorship of any of the provisions of this Agreement. Any reference to any federal, state, local, or foreign statute or law shall be deemed also to refer to all rules and regulations promulgated thereunder, unless the context requires otherwise.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement to be effective the day and year set forth above.

GROVE FARM FISH & POI, LLC,
a Hawaii limited liability company

By: _____

     Name: _____

     Its: _____

Seller

VISIONARY, LLC,
a Virginia limited liability company

By: _____

     Name: _____

     Its: _____

Buyer

14